```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                         FORT MYERS DIVISION
```

MIKE MCGLOCKLIN,

        Plaintiff,

v.                          Case No: 2:15-cv-609-FtM-29MRM

FNU BLANKENSHIP and G. DURAND,

        Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court upon the following:

> Defendant Karen Blankenship's motion for summary judgment (Doc. 44, filed November 18, 2016);
>
> Defendant Gail Durand's motion for summary judgment (Doc. 45, filed November 18, 2016);
>
> Plaintiff's response in opposition to the motions for summary judgment (Doc. 62, filed March 31, 2017); and
>
> Defendant Blankenship's and Defendant Durand's Reply (Doc. 63, filed April 10, 2017).

For the reasons given in this Order, the motions for summary judgment filed by the defendants (Doc. 44; Doc. 45) are **GRANTED**, and this case is dismissed with prejudice.

### I.   Background and Procedural History

Plaintiff initiated this action on October 2, 2015 by filing a *pro se* complaint against Defendants Karen Blankenship and Gail

Durand Clarke (Doc. 1).[1]  Plaintiff's amended complaint (Doc. 16) is the operative complaint before the Court.  Both Defendants filed an answer and affirmative defenses to the amended complaint (Doc. 21; Doc. 22), and on March 4, 2016, the parties were directed to conduct discovery (Doc. 31).

Both defendants filed motions for summary judgment on April 18, 2016, and attached numerous documents in support of their motions (Doc. 43; Doc. 44; Doc. 45).  Plaintiff was directed to respond to the motions (Doc. 46).  Plaintiff was cautioned that: (1) his failure to respond to the motions would indicate that they were unopposed; (2) all material facts asserted by the defendants would be considered admitted unless controverted by proper evidentiary materials; and (3) Plaintiff could not rely solely on the allegations of his pleadings to oppose the motions (Doc. 46) (citing Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985)).  Plaintiff filed a response in opposition to the defendants' motions on March 31, 2017 (Doc. 62).  Despite the aforementioned warning, Plaintiff did not attach any evidentiary materials to his response.

---

[1] Plaintiff refers to Defendant Gail Durand Clarke as Defendant Durand in his amended complaint.  Moreover, the documents submitted by the defendants to support their motions for summary judgment generally refer to only Defendant Durand.  Accordingly, to avoid confusion, this Defendant will be referred to as Defendant Durand in this Order.

## II. Pleadings

### a. Amended Complaint

The allegations against Defendant Nurse Blankenship in Plaintiff's amended complaint are directed towards the allegedly insufficient medical treatment he received after he fell from his bunk on February 9, 2015 (Doc. 16 at 7-8). Plaintiff bumped his head on the back of the toilet when he fell. Id. at 9. Plaintiff asserts that, after he fell, he was taken to the medical department where Defendant Blankenship completely refused to provide treatment. Id. at 7. He asserts that Defendant Blankenship told him that she was going to write in Plaintiff's medical records that nothing was wrong with him and that she did not care if he told anybody because they would believe her over him. Id. He was taken back to confinement where he was, once again, assigned a top bunk. Plaintiff asserts that he still gets headaches and dizziness, and suffers from pain in his left shoulder and left elbow. Id. at 9. He gets cramps in his lower back, and suffers pain in his spine, legs, and feet. Id.

Plaintiff's claims against Defendant Nurse Durand are less clear. He asserts that she does not provide adequate responses to his numerous medical grievances, and continuously tells him that the medical professionals who examined him after his fall from his bunk did not order follow up appointments (Doc. 16 at 9).

Plaintiff further states that "both nurses" have told him that he did "bad" on his eye exam and that they would schedule him for glasses because he failed the eye exam. Id. He asserts that, before he fell from his bunk, he had 20/20 vision, but now it is difficult for him to see far away or close up. Id. He can no longer see small numbers close-up, and when he tries to read, it makes his eyes water and turn red. Id. Plaintiff claims that his eyes are in a lot of pain. Id.

As relief, Plaintiff asks this Court to order Charlotte Correctional Facility to ensure that he is examined by a qualified physician and a "neurologist who specializes in the care and treatment of chiropractic neurology, specialize, CAT scan, MRI." (Doc. 16 at 11). He also asks that the Court arrange for him to be seen by an eye specialist, and any other follow-up care. Id. Plaintiff further demands an indefinite and permanent bottom bunk pass, a back brace, a knee brace, a walking cane, a CAT scan, and an MRI. Id. at 10. He also wants to be transferred to a different facility that has better medical care. Id.

In addition to the requested injunctive relief, Plaintiff seeks one million dollars for his eye damage; $750,000 from each defendant due to their refusal to provide medical treatment; $750,000 from each defendant because of Plaintiff's emotional

injuries; and $750,000 from each defendant in punitive damages (Doc. 16 at 13).

### b. Motions for Summary Judgment

Defendants Blankenship and Duran have filed similar motions for summary judgment (Doc. 44; Doc. 45). Both defendants urge that Plaintiff has not demonstrated an objectively serious medical need and that, even if Plaintiff was able to demonstrate an objectively serious medical need, he has not shown that either defendant was deliberately indifferent to that need. Id.

In support of their motions, the defendants filed Plaintiff's inmate file, consisting of Plaintiff's medical records and the medical grievances he has submitted (Doc. 43-1, "McGlocklin Records"). They also filed: a document showing the termination of Plaintiff's lower bunk pass (Doc. 43-2); Plaintiff's Disciplinary Records (Doc. 43-3); Defendant Blankenship's Affidavit (Doc. 43-4, "Blankenship Aff."); and Defendant Durand-Clarke's Affidavit (Doc. 43-5, "Durand Aff.").

### c. Plaintiff's Response

In his response to the Plaintiff's motion for summary judgment (Doc. 62), Plaintiff appears to completely abandon his arguments regarding the defendants' alleged failure to treat his injuries from the fall from his bunk. Instead, he posits, for the first time, that his vision issues may actually be caused by chronic

high blood pressure and that the defendants have been deliberately indifferent for failing to adequately treat his high blood pressure. Id. He asserts that he has "repeatedly complained about the lack of proper and adequate treatment for his high blood pressure and other medical issues and conditions, and to his argument that the Defendant's [sic] have repeatedly ignored his complaints." Id. at ¶ 11. He also urges that the defendants have over-prescribed ibuprofen. Id. at 12. Plaintiff neither offers evidence to support his claims, nor does he cite to the evidence offered by the defendants.[2]

The defendants filed a reply, generally alleging that Plaintiff has failed to rebut their record evidence (Doc. 63). Accordingly, they argue, his response was "insufficient to avoid summary judgment pursuant to [Rule 56]." Id.

### III. Standards of Review

---

[2] It is well-settled that a plaintiff cannot argue a new theory of relief for the first time in response to a motion for summary judgment. See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.")(citing Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996)); Cruz v. Advance Stores Co., Inc., 842 F. Supp. 2d 1356, 1360 (S.D. Fla. 2012) ("[A] party may not raise a new theory for the first time in response to a summary judgment motion."). Accordingly, the Court will not address Plaintiff's new arguments that the defendants were deliberately indifferent to his serious medical needs for not treating his high blood pressure or for over-prescribing ibuprofen because these arguments are not properly before the Court.

### a. Summary Judgment Standard

Summary judgment is appropriate only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The movant may meet this burden by presenting evidence that would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some elements of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322–324.

If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572,

1577 (11th Cir. 1991). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, (1986).

### b. Deliberate Indifference Standard

Prison officials violate the Eighth Amendment when they act with deliberate indifference to a plaintiff's health or safety. Estelle v. Gamble, 429 U.S. 97, 97 (1976). To state an Eighth Amendment claim for deliberate indifference to a serious medical need, a plaintiff must allege: (1) a serious medical need; (2) deliberate indifference to that need by the defendants; and (3) causation between the defendants' indifference and the plaintiff's injury. Youmans v. Gagnon, 626 F.3d 557, 563 (11th Cir. 2010). In order to establish deliberate indifference to a serious medical need on the part of a defendant, a plaintiff must show subjective knowledge of a risk of serious harm and disregard of that risk by conduct that is more than gross negligence. Townsend v. Jefferson County, 601 F.3d 1152, 1158 (11th Cir. 2010).

### IV. Analysis

#### a. Defendant Blankenship is entitled to summary judgment on Plaintiff's deliberate indifference claims

Plaintiff asserts that he fell from his bunk on February 9, 2015 and that Defendant Blankenship was deliberately indifferent

for failing to treat his injuries. Specifically, Plaintiff asserts that he was "rushed to medical in a wheel chair to only be refused medical attention and medical treatment by Blankenship." (Doc. 16 at 7).

Defendant Blankenship has presented Plaintiff's medical records showing that Plaintiff went to the infirmary at 8:30 on February 9, 2015 complaining of pain in his left side due to a fall from his bunk (Doc. 43-1 at 229-20). He was first examined by non-defendant Nurse LaRosa who documented no swelling, deformity, bleeding, tingling, or numbness. Id. Nurse LaRosa also noted that Plaintiff asked for a low bunk pass at that time. Id. Plaintiff was told to keep his arm elevated, and Defendant Blankenship was notified at 8:45. Id. Nurse LaRosa noted that Plaintiff was acting disobediently. Id. at 230.

At 9:15, Plaintiff was examined by Defendant Blankenship (Doc. 43-1 at 231-32). Defendant Blankenship noted in Plaintiff's medical chart that Plaintiff complained of pain in his left arm, shoulder, and hip, but did not grimace or complain of discomfort upon palpitation. Id. Defendant Blankenship gave Plaintiff ibuprofen to alleviate pain and a two-week lower bunk pass. Id. Defendant Blankenship determined that an x-ray was not required and that further treatment was unnecessary. Id. Plaintiff was instructed to contact "sick call" if his pain worsened or if he

needed additional pain relievers.  Id.  Defendant Blankenship recommended that Plaintiff be seen by the mental health providers at Charlotte Correctional Institution.  Id.  Plaintiff was uncooperative during Nurse Blankenship's examination, and she contacted security for assistance.  Id.  Thereafter, Plaintiff was placed in administrative confinement for disobeying orders (Doc. 43-4).

The medical records do not indicate that Defendant Blankenship examined Plaintiff for his fall on any other occasion.[3] Three weeks after his consultation with Defendant Blankenship, Plaintiff was examined by non-defendant Nurse Nies, after he complained of pain in his lower back and left side (Doc. 43-1 at 95, 235-36).  Nurse Nies gave Plaintiff ibuprofen and a topical balm to ease his pain, but did not recommend any further treatment. Id. at 235-36.

Plaintiff does not dispute the accuracy or authenticity of the medical records offered by the defendants.  Therefore, it is undisputed that Plaintiff was promptly treated by Defendant Blankenship and provided with pain reliever after his fall from

---

[3] Defendant Blankenship attests that Plaintiff filed an inmate request on June 2, 2015, stating that he did not want to be seen by Defendant Blankenship at his scheduled clinic appointment (Blankenship Aff. at ¶ 8; Durand Aff. at ¶ 16). Plaintiff was advised that he could not chose the medical provider with whom he consults (Durand Aff. at ¶ 16).  Plaintiff, thereafter, refused to attend his medical appointment.

his bunk. Defendant Blankenship filed an affidavit in which she attested that, based upon her medical judgment and background, she saw no sign that Plaintiff needed additional care (Blankenship Aff. at ¶ 6). Defendant Blankenship's diagnosis was supported by Nurse Nies' subsequent evaluation at which Nurse Nies did not recommend further treatment (Doc. 43-1 at 235-36). Although Plaintiff urges that he wanted x-rays, a CAT scan, and an MRI, he has presented no evidence indicating that such tests were necessary or that Defendant Blankenship's diagnosis was incorrect, much less deliberately indifferent. Even if Plaintiff could demonstrate that additional tests were warranted, at most, Defendant Blankenship's failure to order additional tests was mere negligence which is not a constitutional violation. Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

The defendants' evidence shows that Plaintiff received treatment and pain relief after his fall. Although he clearly preferred different treatment, he does not state a deliberate indifference claim. See Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Although Hamm may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference."); Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988) ("Although the Constitution does require that

prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice."). That Plaintiff would have preferred x-rays, an MRI, and a CAT scan is merely a disagreement with the care he received.

To the extent Plaintiff urges that Defendant Blankenship was deliberately indifferent because he (Plaintiff) did not have a current lower bunk pass when he fell, Defendant Blankenship is entitled to summary judgment. Defendant Blankenship has presented evidence that Plaintiff's bunk pass was expired at the time of the fall (Doc. 43-2). She also presented evidence that David Reddick, not she, was the person who issued the pass. Id. Plaintiff has not even alleged that Defendant Blankenship was the person responsible for re-issuing the pass or that she ever refused to do so. In fact, Defendant Blankenship issued a lower-bunk pass to Plaintiff when he asked for it (Doc. 43-1 at 231-32). To impose liability under § 1983 on an individual defendant, the defendant's act or omission must *cause* the deprivation of the plaintiff's constitutional rights. Porter v. White, 483 F.3d 1294, 1306 n. 10 (11th Cir. 2007)("Congress did not intend for § 1983 liability to attach where causation is absent," and as such "[a] § 1983 claim requires proof of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional

deprivation."); Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) ("[S]ection 1983 requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation."). Here, Plaintiff has not shown that Defendant Blankenship was responsible for ensuring that Plaintiff's low-bunk pass was up-to-date or that she refused to issue such a pass when necessary. The evidence before this Court shows the opposite.

Plaintiff has failed to show that Defendant Blankenship was responsible for any constitutional violation. Based on the evidence on the record before the Court, the Court concludes that no rational jury could find that Defendant Blankenship acted with the requisite deliberate indifference necessary to support a 42 U.S.C. § 1983 claim. Therefore, Defendant Blankenship is entitled to summary judgment on Plaintiff's deliberate indifference claims.

**b. Defendant Durand is entitled to summary judgment on Plaintiff's deliberate indifference claims**

Plaintiff's first claim against Nurse Durand appears to be predicated upon this defendant's unsatisfactory responses to his grievances (Doc. 16 at 9). Specifically, he asserts that, when Defendant Durand responded to Plaintiff's grievances, "when all the requests clearly states that I need medical attention medical treatment from a doctor for my injuries I receive on 2-9-15 when

I fell off the top bunk, the responses would be denied or the response was no follow up was order [sic]." Id.

Defendant Durand attests that she denied Plaintiff's grievances on March 4, 2015 and March 13, 2015 with a note pointing to Nurse Nies' examination on March 3, 2015 in which Nurse Nies issued ibuprofen and no follow-up with a physician was ordered (Duran Aff. at ¶¶ 12, 13). After Plaintiff filed his April 29, 2015 and May 15, 2015 grievances, he was directed to access "sick call" if he required an evaluation from a physician. Id. at ¶¶ 14-15. Defendant Durand attaches copies of these grievances and responses to her motion for summary judgment (Doc. 43-1 at 95, 96, 99). Defendant Durand attests that on June 8, 2015, the Warden of Charlotte Correctional Institution denied Plaintiff's formal grievance on this issue, "relying on the assessment Nurse Blankenship performed of the Plaintiff on February 9, 2015 wherein she issued a two-week low-bunk pass; the March 3, 2015 assessment wherein [Plaintiff] was prescribed ibuprofen and analgesic balm; and his June 1, 2015 clinic appointment that he refused because he did not want to be evaluated by Nurse Blankenship." Id. at ¶ 18. The Warden also noted that Plaintiff had not visited sick call since his consultation with Nurse Nies (Doc. 43-1 at 102). Plaintiff does not dispute the accuracy or authenticity of the

records relied upon by Defendant Durand; nor does he assert that he accessed sick call at any time after his visit with Nurse Nies.

Other than expressing dissatisfaction with Defendant Durand's responses to his grievances, Plaintiff does not explain how Defendant Durand is responsible for, or caused, his alleged harm.[4] Filing a grievance with a supervisory person does not automatically make the supervisor liable for the allegedly unconstitutional conduct brought to light by the by the grievance, even when the grievance is denied. See Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[D]enial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); Grinter v. Knight, 532 F.3d 567, 576 (6th Cir. 2008) ("The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983.") (quoting Shehee v. Luttrell, 199 F. App'x 295, 300 (6th Cir. 1999)); Lomholt v. Holder, 287 F.3d 683, 683 (8th Cir. 2002) (holding that defendants' denial of plaintiff's grievances did not state a substantive constitutional claim); see also Rickerson v.

---

[4] To the extent Plaintiff urges that Defendant Durand should have ordered the x-rays, CAT scan, and MRI he desired without requiring him to access sick call, Plaintiff is not entitled to the treatment of his choice. See discussion supra Defendant Blankenship. Moreover, Plaintiff has not even asserted that Defendant Durand had the authority to order the care to which Plaintiff feels he was entitled.

Gills, No. 5:11cv279/MP/GRJ, 2012 WL 1004733, at *3 (N.D. Fla. Feb. 8, 2012) (finding prisoner failed to state § 1983 claim against prison official whose sole involvement was to review and deny plaintiff's administrative grievance.).

Given that Plaintiff refused to return to sick call for further evaluation, as directed by both Defendant Durand and the Warden, and given that Plaintiff refused to be examined by Defendant Blankenship, the plausibility of subjecting Defendant Durand to liability for medical deliberate indifference, is even more attenuated. Based on the evidence before the Court (which Plaintiff has not disputed), the Court concludes that no rational jury could find that Defendant Durand acted with the requisite deliberate indifference necessary to support a 42 U.S.C. § 1983 claim when she evaluated Plaintiff's grievances. Defendant Durand is entitled to summary judgment on any deliberate indifference claim based upon her denial of Plaintiff's grievances.

Next, Plaintiff urges that Defendant Durand is liable for deliberate indifference based upon her failure to ensure that he received adequate vision care after he fell from his bunk (Doc. 16 at 9). Defendant Durand has attached evidence showing that Plaintiff had an eye examination with non-defendant Nurse Williams on September 2, 2015, showing Plaintiff's vision to be 20/40, both with and without glasses (Doc. 43-1 at 241; Duran Aff. at ¶ 13).

On November 23, 2015, Plaintiff had another eye examination with the Chief Health Officer at Charlotte Correctional (Dr. Wetterer), showing Plaintiff's vision to be 20/30 (Doc. 43-1 at 32; Duran Aff. at ¶ 14). Plaintiff filed a grievance on November 23, 2015, in which he complained of blurred and double vision and requested additional eye examinations (Doc. 43-1 at 119; Duran Aff. at ¶ 15). Dr. Wetterer denied the grievance, noting that an inmate must have vision of 20/60 to be referred to an eye doctor (Doc. 43-1 at 120, Durand Aff. at ¶ 16). Nevertheless, on February 15, 2016, Plaintiff was examined by optometrist Dr. Furnari, in response to Plaintiff's claims of double vision (Doc. 43-1 at 338-39; Durand Aff. at ¶ 18). The exam showed that Plaintiff had 20/30 vision and no "deviations consistent with double vision." (Doc. 43-1 at 338-39; Durand Aff. at ¶ 18). Plaintiff wrote a grievance about Dr. Furnari, complaining that the doctor was rude to him, and Defendant Durand denied the grievance based upon Dr. Furnari's finding that Plaintiff did not have any symptoms indicative of double vision (Doc. 43-1 at 130; Durand Aff. at ¶ 20). As noted, the denial of a grievance cannot subject a party to constitutional liability.

Defendant Durand has presented evidence that Plaintiff received eye care on three separate occasions after he complained of vision problems. Plaintiff has not presented his own evidence

showing that more examinations were necessary, nor has he asserted that the exams performed by the prison were unreliable. Plaintiff's argument, raised for the first time in response to the defendants' motions for summary judgment, that Defendant Durand should have checked his blood pressure or prescribed less ibuprofen, are not properly before the Court. See discussion supra n. 2. Nor has Plaintiff presented evidence that his alleged vision difficulties are actually caused by high blood pressure or by too much ibuprofen.

Plaintiff has not supported his assertions of deliberate indifference based on Defendant Durand's failure to provide eye care with any evidence. No rational jury could find that Defendant Durand acted with the requisite deliberate indifference necessary to support a 42 U.S.C. § 1983 claim. Defendant Durand is entitled to summary judgment on Plaintiff's deliberate indifference claims related to Plaintiff's eye care.

## V. Conclusion

Because summary judgment is granted in favor of the defendants on each of Plaintiff's claims, this Court will not address the defendants' assertion that Plaintiff does not suffer from an objectively serious medical condition.

In accordance with the foregoing, it is hereby **ORDERED:**

1. The motions for summary judgment filed by Defendants Blankenship and Durand (Doc. 44; Doc. 45) are **GRANTED**. With no remaining defendants or claims, this case is dismissed with prejudice.

2. The **Clerk of Court** is directed to terminate any pending motions, close this case, and enter judgment in favor of the defendants.

**DONE** and **ORDERED** in Fort Myers, Florida on this ___26th___ day of April, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Mike McGlocklin
Counsel of Record